UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HAROLD DOMBROWSKI,

        Plaintiff,

v.                                         Case No. 3:21-cv-1199-BJD-PDB

WILSON et al.,

        Defendants.
_____

## **ORDER**

### I. Status

Plaintiff, Harold Dombrowski, an inmate in the custody of the Florida Department of Corrections (FDOC), is proceeding *pro se* and *in forma pauperis* on a complaint for the violation of civil rights under 42 U.S.C. § 1983 (Doc. 1; Compl.). Plaintiff sues the following six individuals based on a slip-and-fall that occurred in the kitchen at Hamilton Correctional Institution (HCI) on September 13, 2020: (1) Wilson, a food service director; (2) Cobb, a food service supervisor; (3) O. Jelks, a corrections officer; (4) K. Fongeallaz, a nurse; (5) J. Selph, a nurse; and (6) I. Lee, a nurse.[1] *See* Compl. at 3-4, ¶ 23.

---

[1] Defendants Fongeallaz, Selph, and Lee (Medical Defendants) are or were employed by a healthcare company (alleged by Plaintiff to be Centurion), *see* Compl. at 2, 4, and

Plaintiff alleges Defendants Wilson and Cobb forced him to work in the kitchen wearing unauthorized footwear (crocs), which did not have "traction"; Defendants Cobb and Jelks, who were present when he fell, delayed obtaining medical treatment for him, believing he was "faking [an] injury"; Defendants Fongeallaz and Selph discontinued their medical exam when they discovered Plaintiff had a temperature and, per COVID-19 protocol, placed Plaintiff in isolation even though he was unable to walk; and the Medical Defendants denied him pain medication. *Id.* ¶¶ 17, 20-23, 26, 28, 32-39. When Plaintiff finally was taken for an x-ray three days later, it was discovered he had broken his hip. *Id.* ¶ 43. He had emergency surgery—a total right hip replacement—at Orlando Regional Medical Center on September 19, 2020. *Id.* ¶¶ 44-46.

The HCI Defendants move to dismiss the complaint for Plaintiff's failure to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA) (Doc. 18; HCI Def. Mot.). The Medical Defendants move to dismiss the complaint for Plaintiff's failure to state a deliberate indifference claim against them, and they adopt the HCI Defendants' argument regarding exhaustion (Doc. 33; Med. Def. Mot.). Plaintiff opposes both motions (Doc. 27; HCI Resp.) (Doc. 36; Med. Def. Resp.).

---

are represented by different counsel than Defendants Wilson, Cobb, and Jelks (HCI Defendants).

2

## II. Motion to Dismiss Standard

A defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding *pro se*, but need not accept as true legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## III. Analysis

### A. Exhaustion

The PLRA provides, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of this requirement "is to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1214-15 (11th Cir. 2015). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits."

*Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). *See also Jones v. Bock*, 549 U.S. 199, 211 (2007). While "the PLRA exhaustion requirement is not jurisdictional[,]" *Woodford v. Ngo*, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and unexhausted claims cannot be brought," *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (citing *Jones*, 549 U.S. at 211).

Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. *Woodford*, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Id.* Generally, to properly exhaust administrative remedies, a Florida prisoner must timely complete a three-step process as fully set forth in the Florida Administrative Code (FAC) by filing an informal grievance, then a formal grievance, and then an appeal to the Office of the Secretary of the FDOC. *See* Fla. Admin. Code rr. 33-103.001 through 33-103.018.

A grievance filed at any step of the process may be returned to the prisoner without action or processing for certain enumerated procedural deficiencies, including untimeliness. *See* Fla. Admin. Code r. 33-103.014(1). If a prisoner submits a grievance that does not comply with the grievance process because it is late, for example, but the grievance is processed and substantively addressed, prison officials may not later challenge exhaustion on those

4

procedural grounds. *See, e.g., Whatley*, 802 F.3d at 1215 (agreeing with other circuits and holding "a procedural flaw ignored by a prison cannot later be resurrected . . . to defeat exhaustion"). In other words, in ruling on an exhaustion defense, a court may not enforce a procedural rule that prison officials themselves ignored when processing a grievance. *Id.*

Prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." *See Jones*, 549 U.S. at 216. The determination of whether a prisoner exhausted his available administrative remedies before pursuing a federal claim is a matter of abatement, properly addressed through a motion to dismiss. *See Bryant*, 530 F.3d at 1374-75. As such, the defendant bears the burden. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). When confronted with an exhaustion defense, courts in the Eleventh Circuit employ a two-step process:

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. . . . Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

*Whatley*, 802 F.3d at 1209 (citing *Turner*, 541 F.3d at 1082-83).

The HCI Defendants offer copies of grievances Plaintiff filed between September 1, 2020, and March 30, 2021 (Docs. 18-1, 18-2; Def. Exs. A, B). They

5

contend those documents show Plaintiff did not exhaust his administrative remedies because the appeals he filed with the Office of the Secretary were returned for being facially deficient. HCI Def. Mot. at 8-10. In his response, Plaintiff contends he exhausted his administrative remedies, and he provides copies of relevant grievances he filed at each of the three steps of the process (Doc. 27-1; Pl. Ex.).[2] Accepting as true that Plaintiff exhausted his administrative remedies, as he asserts, the Court cannot resolve the issue at the first step of the *Turner* analysis and, therefore, will proceed to the second step.

Upon review, the Court finds Defendants do not carry their burden because they have overlooked relevant grievances, focusing solely on appeals Plaintiff filed with the Office of the Secretary between September 1, 2020, and March 30, 2021. Plaintiff filed two informal grievances about the September 13, 2020 incident—one complaining about unsafe working conditions in the kitchen and the other about medical care he received immediately after his fall. Def. Ex. B at 16-17. He filed these informal grievances on February 26, 2021, well after the deadline set forth in the FAC, but they were not returned on that basis. *Id.* Indeed, they both were approved, and Plaintiff was informed

---

[2] Some of the grievances Plaintiff provides with his response are duplicates of those provided by the HCI Defendants. Where duplicates, the Court will cite the HCI Defendants' exhibits.

6

his complaints had been referred to the Office of the Inspector General (OIG). *Id.*

Once Plaintiff's informal grievances were approved and his complaints referred to the OIG, there was nothing more for him to do. *See Luckey v. May*, No. 5:14-cv-315-MW-GRJ, 2016 WL 1128426, at *11 (N.D. Fla. Feb. 17, 2016), *report and recommendation adopted sub nom.*, 2016 WL 1169481 (N.D. Fla. Mar. 22, 2016) (finding the plaintiff exhausted his administrative remedies where he filed an informal grievance, which was "approved" from the standpoint that his allegations had been referred to the OIG). *See also Tierney v. Hattaway*, No. 3:20-cv-5738-LAC-ZCB, 2022 WL 18159995, at *2 (N.D. Fla. Dec. 9, 2022) ("Given that [the plaintiff's] informal grievance was 'approved,' and the matter referred to the [OIG], it would have been pointless for [him] to appeal by filing a formal grievance.").

Even if the approved informal grievances were not sufficient to fully exhaust his administrative remedies, Plaintiff completed the three-step grievance process by filing formal grievances and appeals to the Office of the Secretary. Def. Ex. B at 23, 26; Pl. Ex. at 4, 9. In response to his formal grievances, which were denied, Plaintiff was specifically informed, "As you have failed to provide new or unknown information no further action is deemed necessary at this time." Def. Ex. B at 22, 25. Despite being told he needed to

7

take no further action, Plaintiff filed appeals to the Office of the Secretary on April 3, 2021, Pl. Ex. at 4, 9, after the March 30, 2021 cut-off Defendants used for their search, Def. Ex. A at 1. His appeals were approved. *See* Pl. Ex. at 5, 10.

The Court finds Plaintiff exhausted his administrative remedies because his informal grievances were approved, and he nevertheless completed the three-step grievance process. As such, Defendants' motions are due to be denied as to exhaustion.

### B. Deliberate Indifference

A claim for deliberate indifference to a serious illness or injury is cognizable under § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a plaintiff first must allege he had a serious medical need. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Next, the plaintiff must "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). Finally, the plaintiff must allege facts showing a causal connection between the defendant's conduct and his resulting injuries. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

A prison official who delays medical care for an inmate who is in pain from a serious injury may be found to have been deliberately indifferent. *Brown v. Hughes*, 894 F.2d 1533, 1537-38 (11th Cir. 1990). This is especially true in the case of a broken bone. *See id. See also Harris v. Coweta Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994) ("A few hours' delay in receiving medical care for emergency needs such as broken bones . . . may constitute deliberate indifference."). "With [a broken bone], it may be that deliberately indifferent delay, no matter how brief, would render defendants liable as if they had inflicted the pain themselves." *Brown*, 894 F.2d at 1538. In *Brown*, the court held the district court improperly granted summary judgment in favor of the defendant, a prison guard, because the plaintiff claimed he informed the defendant he suspected his foot was broken and his foot swelled, but the guard ignored him, and the plaintiff did not receive medical treatment until hours later. *Id.* at 1358-59.

The Medical Defendants argue Plaintiff alleges no more than "simple negligence" against them. Med. Def. Mot. at 6. In his response, Plaintiff faults the Medical Defendants for the five-hour delay in getting any medical attention after his fall. Med. Def. Resp. at 2. He also says the Medical Defendants "denied [him] pain medication or treatment for his femoral neck fracture." *Id.* Plaintiff does not allege in his complaint that the Medical Defendants were responsible

9

for the initial five-hour delay; he faults Defendants Cobb and Jelks for that. *See* Compl. ¶ 26. But Plaintiff does allege Defendants Fongeallaz and Selph discontinued a physical examination when they discovered he had a temperature even though he was brought to the medical unit on a stretcher after having fallen five hours previously. *Id.* ¶¶ 30-34. He also alleges the Medical Defendants denied him pain medication despite him being in so much pain he could not walk. *Id.* ¶¶ 35-37. Plaintiff alleges he was unable to retrieve his food trays for three days and defecated in his clothing. *Id.* ¶¶ 38-39.

Even if the Medical Defendants suspected Plaintiff had COVID-19, Plaintiff alleges facts permitting the reasonable inference they were deliberately indifferent to a serious medical need. He alleges he was in such severe pain after falling that he could not walk on his own, yet the Medical Defendants permitted him to stay in an isolation cell for three days with no physical examination or treatment. His pain became so severe that he eventually was "crying in pain" on his cell floor, which prompted a corrections officer to declare a "medical emergency." *Id.* ¶¶ 40-41. Plaintiff's allegations go beyond simple negligence. What Plaintiff alleges is more akin to medical care that was "so cursory as to amount to no treatment at all." *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). *See also McElligott v. Foley*, 182 F.3d 1248, 1256-57 (11th Cir. 1999) (recognizing that negligently

10

diagnosing an injury is not deliberate indifference but ignoring a prisoner's need for "further diagnosis of and treatment for . . . severe pain" may constitute deliberate indifference). Whether the Medical Defendants acted appropriately under the circumstances is best addressed on a more complete record at summary judgment.

Accordingly, it is now

**ORDERED**:

1. Defendants Wilson, Cobb, and Jelks's motion to dismiss (Doc. 18) is **DENIED**.

2. Defendants Fongeallaz, Selph and Lee's motion to dismiss (Doc. 33) is **DENIED**.

3. Defendants must **answer** the complaint (Doc. 1) within **twenty days** of the date of this Order.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of March 2023.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Harold Dombrowski
Counsel of Record